UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA TRANCHMONTAGNE,

               Plaintiff,

v.

UNITED STATES DEPARTMENT
OF HOUSING AND URBAN
DEVELOPMENT, MICHIGAN
STATE HOUSING DEVELOPMENT
AUTHORITY, and GARY HEIDEL,
Acting Director,

               Defendants.

_____/

Case No. 20-cv-12842

Paul D. Borman
United States District Judge

**OPINION AND ORDER:**
**(1) GRANTING DEFENDANTS GARY HEIDEL AND MSHDA'S MOTION
TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) & (6) (ECF NO. 13);
(2) GRANTING DEFENDANT UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT'S MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(b)(1) & (6) (ECF NO. 16);
(3) DENYING PLAINTIFF DEANNA TRANCHMONTAGNE'S MOTION
FOR A VERBAL RESPONSE (ECF NO. 18); AND
(40 DENYING PLAINTIFF'S MOTION FOR INJUNCTION (ECF NO. 8)**

Plaintiff, Deanna Tranchmontagne, proceeding pro se, brings this lawsuit

against Defendants, the United States Department of Housing and Urban

Development ("HUD"), the Michigan State Housing Development Authority

("MSHDA"), and Gary Heidel, as acting Director of MSHDA, challenging the

termination of her Section 8 housing choice voucher. Plaintiff alleges that

termination of her subsidized housing payments violates the federal Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act, and the Constitution's equal protection and due process protections. She further claims that she has been deprived of her rights under 42 U.S.C. § 1983, and asserts a breach of contract claim. Plaintiff seeks an injunction to prevent her eviction and denial of Section 8 housing, a full and fair hearing, that the findings of the administrative law judge be set aside, and that monetary damages be awarded.

Now before the Court are Plaintiff's Motion for Preliminary Injunction (ECF No. 8), Defendants Heidel and MSHDA's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) & (6) (ECF No. 13), Defendant HUD's Motion to Dismiss (ECF No. 16), and Plaintiff's Motion for a Verbal Response to Defendants' motions to dismiss (ECF No. 19).

The Court does not believe oral argument will aid in its disposition of the motions; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons set forth below, the Court DENIES Plaintiff's motion for preliminary injunction, DENIES Plaintiff's motion for verbal response to Defendants' motions to dismiss, GRANTS Defendants Heidel and MSHDA's motion to dismiss, and GRANTS Defendant HUD's motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Federally Subsidized Housing Choice Voucher Program

The Housing Choice Voucher Program ("HCV Program"), or Section 8 housing program, is the federal government's program for assisting low-income families to afford housing. *See* 42 U.S.C. § 1437f; 24 C.F.R. § 982.1(a)(1). The program is administered by state or local public housing agencies ("PHAs"), which receive federal funding from HUD. *Id.* Families select and rent units that meet program standards, and the PHA makes rent subsidy payments directly on behalf of the family. 24 C.F.R. § 982.1(a)(2).

Although HUD provides funding for the Section 8 program, the PHA is responsible for administering it. *See id.* §§ 982.1–982.643. For example, the PHA admits families for participation in the program, *id.* § 982.202, issues housing vouchers to families, *id.* § 982.302, and makes rent payments, *id.* § 982.451. The PHA also has the authority to terminate rental assistance under the program. *Id.* § 982.552. The Michigan State Housing Development Authority ("MSHDA") is the PHA/state agency that uses federal funds to administer the Section 8 program in Michigan. MCL § 125.1422(c), (t).

Under the HCV Program in Michigan, a prospective tenant applies for a housing voucher from MSHDA. If a voucher is issued, the tenant finds a suitable place to live. 24 C.F.R. § 982.302. MSHDA enters into a Housing Assistance

Payment ("HAP") contract with the landlord. 24 C.F.R. § 982.451. The landlord enters into a lease with the tenant and MSHDA pays a portion of the tenant's rent directly to the landlord. 24 C.F.R. § 982.501 *et. seq.*; *see also generally* 42 U.S.C. § 1437f and 24 C.F.R. § 982.1, *et seq.*; 24 C.F.R. §§ 883.101-883.608; Mich. Comp. Laws § 125.1422(t).

Under 24 C.F.R. § 982.308, landlords are required to provide tenants with an addendum to the lease agreement that sets forth MSHDA's authority and tenant and landlord responsibilities under the HCV Program, as found in the governing regulations. *See e.g.* 24 C.F.R. § 982.551. MSHDA's authority under the federal regulations includes authority to terminate HCV Program participation if the tenant violates his or her HCV Program obligations. 24 C.F.R. §§ 982.551-553.

**B. Termination of Plaintiff's Program Participation**

Plaintiff began participation in the HCV Program on June 1, 2017. (ECF No. 1, Complaint, PageID.1-2.) Plaintiff lives with her partner, Jerome Carleton, and their minor child. (*Id.* PageID.2.) Plaintiff suffers from a mental disability and drug and alcohol addiction. (*Id.*) Jerome Carleton had a leg amputation and suffers from drug addiction. (*Id.*) Their minor child is diagnosed with autism spectrum disorder. (*Id.*)

On June 3, 2019 (later amended on June 27, 2019), MSHDA notified Plaintiff that her participation in the HCV Program was terminated due to multiple violations

of the Program's rules, including two arrests (Plaintiff and Mr. Carleton each had one arrest). (*Compl.*, PageID.4; ECF No. 13-2, Proposal for Decision at pp. 1-4, PageID.83-86.) Plaintiff requested an administrative hearing to object to the termination. (Proposal for Decision at p. 4, PageID.86.) The hearing was held on September 24, 2019 before Administrative Law Judge Peter L. Plummer. (Compl., PageID.5.) At the hearing, Plaintiff appeared with her representative, Chelsea Battin, and both testified. (Proposal for Decision at p. 4, PageID.86.) Plaintiff also introduced 88 pages of documents into the record at the hearing. (*Id.* at pp. 5-6, 18, PageID.87-88, 100.)

Following the hearing, the administrative law judge issued his proposal for decision dated December 9, 2019, concluding that Respondent MSHDA had proven by a preponderance of the evidence that Plaintiff: (1) failed to provide true and complete information to MSHDA; (2) failed to pay utilities in a timely fashion and used gifts and other contributions to pay the utilities without reporting that information to MSHDA; (3) committed a violent criminal activity when she tackled an employee of a car dealership; and, (4) that Mr. Carleton possessed cocaine, which is a criminal drug activity. (*Id.* at p. 19, PageID.101) The administrative law judge recommended that Plaintiff's termination from the HCV Program be affirmed. (*Id.* at p. 20, PageID.102) The Proposal for Decision provided that a party may file Exceptions to the Proposal. (*Id.*)

Plaintiff had filed an Exception to the Proposal for Decision on December 30, 2019, and MSHDA filed an Exception in response on January 9, 2020. (ECF No. 13-3, Final Decision and Order at pp. 1-2, PageID.108-09.) On June 1, 2020, MSHDA's Director of Legal Affairs, Clarence L. Stone, Jr., issued the Final Decision and Order ("FDO") and upheld Plaintiff's termination from the Program. (*Id.* at pp. 1-4, PageID.108-12.) That FDO further informed Plaintiff that she had 60 days to file an appeal of the FDO, and that she would not lose her HCV assistance until the Michigan state of emergency and state of disaster as described in Executive Orders issued by the Governor of Michigan as a result of COVID-19 had been lifted. (*Id.* at p. 4, PageID.111.)

## C. Plaintiff's Complaint and Motion for Preliminary Injunction

Plaintiff brought this action on October 20, 2020. She claims that MSHDA terminated her voucher because of her disabilities and in retaliation for her prior accommodation requests, in violation of the Fair Housing Act, the Rehabilitation Act, and the ADA. (Compl., PageID.2-3.) She also alleges that the termination violated her constitutional due process and equal protection rights. (*Id.*, PageID.4-7.) Plaintiff further asserts a breach of contract claim based upon a purported settlement she entered with MSHDA and HUD relating to her application for participation in the Section 8 program. (*Id.*, PageID.8.) She alleges that MSHDA and HUD breached the agreement by seeking to exclude her from the Section 8 program.

(*Id*.) Plaintiff requests an injunction "to prevent [her] eviction and denial of Section 8 Housing," a "full and fair hearing," that "[t]he findings made by the administrative law judge and the Director of MSHDA be set aside," and "[d]amages for breach of agreement and [her] rights under federal law." (*Id*., PageID.8-9.)

Plaintiff filed a motion for preliminary injunction on January 20, 2021, before Defendants had been served with the Complaint,[1] seeking in part the same relief requested in her Complaint – an injunction "to prevent [her] eviction and denial of Section 8 Housing Benefits," pursuant to Fed. R. Civ. P. 65(a). (ECF No. 8, Motion for Preliminary Injunction.)

### D. Defendants' Motions to Dismiss

Upon service (or notice) of Plaintiff's Complaint, the Defendants have filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

### 1. Defendants Heidel and MSHDA's Motion to Dismiss

On March 12, 2021, Defendants Heidel and MSHDA filed their motion to dismiss under Fed. R. Civ. P. 12(b)(1) & (6). (ECF No. 13, MSHDA Defs.' Mot.) The MDHSA Defendants assert that Plaintiff's claims are barred by the Eleventh Amendment. They further argue that Plaintiff's claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

---

[1] The MSHDA Defendants state that they were served with the Complaint in this matter on February 22, 2021, and Defendant HUD asserts that it has not yet been properly served under Fed. R. Civ. P. 4(i)(2).

On March 17, 2021 The Court issued an order notifying Plaintiff of her obligation to respond to the motion to dismiss and directing her to file a response to the MSHDA Defendants' motion to dismiss, if any, by April 6, 2021. (ECF No. 15, Order.) Plaintiff did not file a response.

### 2. Defendant HUD's Motion to Dismiss

On March 30, 2021, Defendant HUD filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) & (6). (ECF No. 16, HUD Mot.) HUD argues that Plaintiff's claims against it are barred by sovereign immunity. HUD further contends that, even if Plaintiff could establish a waiver of sovereign immunity for some of her claims, her Complaint nevertheless fails to state a claim against HUD.

On March 31, 2021, the Court issued an order notifying Plaintiff of her obligation to respond to HUD's motion to dismiss and directing her to file a response to the motion to dismiss, if any, by April 26, 2021. (ECF No. 17, Order.) Plaintiff again failed to file a response.

### 3. Plaintiff files a motion for verbal response

On May 17, 2021, Plaintiff filed a motion requesting to "verbally give my response to defend[an]ts motion to dismiss," asserting that, due to her disability, she is unable to file a response "in the format required[.]" (ECF No. 18, Pl.'s Mot. Verbal Response.) The Court notes that Plaintiff was capable of filing her Complaint and her motion for a preliminary injunction.

The MSHDA Defendants filed a response in opposition to Plaintiff's motion on May 24, 2021, noting that the deadlines have long passed for Plaintiff to respond to the motions to dismiss, and that Plaintiff failed to request an extension of time to submit a response, verbal or otherwise, and fails to offer any explanation for her substantial delay in requesting such relief. (ECF No. 19, MSHDA Defs.' Response.)

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(1)

Plaintiff bears the burden of proving subject matter jurisdiction. *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021) ("[T]he party asserting federal jurisdiction when it is challenged has the burden of establishing it.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Under a facial attack to the sufficiency of the pleadings, as in this case, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A factual attack, by contrast, disputes facts alleged in a complaint that support subject-matter jurisdiction. *Id.* In that instance, there is no presumptive truthfulness. *Id.* Rather, the

Court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Id.*

## B. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must

allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir.1996) (citing *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir. 1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989). A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell,* 414 F. App'x 784, 786 (6th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 678) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford,* 542 U.S. 225, 231 (2004). District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Secretary of Treasury,* 73 F. App'x 836, 837 (6th Cir. 2003).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v.*

*Hewlett-Packard Co.*, 258 F.Supp.2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

Based on the above, in addition to Plaintiff's allegations in her Complaint, the Court will also consider the two additional documents attached as exhibits to the MSHDA Defendants' motion to dismiss, the Proposal for Decision and the Final Decision and Order (ECF Nos. 13-2 and 13-3), which are referenced in the pleadings and central to Plaintiff's claims and/or publicly-available documents.

## III.   ANALYSIS

### A.   Plaintiff's Motion for Preliminary Injunction

Plaintiff has filed a motion for preliminary injunction. (ECF No. 8, Pl.'s Mot. P.I.) A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). Plaintiff bears the burden of demonstrating entitlement to preliminary injunctive relief. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Such relief will only be granted where "the movant carries his or her burden of proving that the circumstances clearly demand

it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

When considering a motion for injunctive relief, the Court must balance the following factors: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief, (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and (4) whether the public interest would be served by granting the preliminary injunctive relief. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion...." *Leary*, 228 F.3d at 739. Plaintiff must do more than just "create a jury issue," and must persuade the court that she has a likelihood of succeeding on the merits of her claims. *Id.* "This is because the preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it." *Id.* (internal quotation marks and citation omitted) (alteration in original). These same factors are considered in evaluating whether to issue a temporary restraining order. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).

"Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). "While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). *See also Monsanto Co. v. Manning*, 841 F.2d 1126, 1988 WL 19169, at *4 (6th Cir. Mar. 8, 1988) (table case) ("It is error to grant a preliminary injunction if the party has no chance or a very slight chance of prevailing on the merits, no matter how strong the balance of irreparable harms may incline in favor of the party seeking the injunction."); *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, No. 08-cv-14922, 2009 WL 275652, at *1, *5 (E.D. Mich. Feb. 5, 2009) (denying preliminary injunction sought against a state university that was a state agency entitled to Eleventh Amendment immunity and observing that "a preliminary injunction may not issue where there is "simply no likelihood of success on the merits....") (citing *Michigan State AFL–CIO*, 103 F.3d at 1249).

Because, as explained further below, Plaintiff has *no* likelihood of success on the merits of her claims against Defendants, the Court cannot grant preliminary injunctive relief and need not examine the remaining preliminary injunction factors. Indeed, it would be error for the Court to issue a preliminary injunction in the face

of an impossibility of success on the merits: "While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." *Miller*, 103 F.3d at 1249.

Accordingly, Plaintiff's motion for preliminary injunction is denied.

## B. Defendants' Motions to Dismiss

### 1. Defendants' motions to dismiss are unopposed

Defendants filed two separate motions to dismiss Plaintiffs' Complaint, both arguing that Plaintiff's claims against them are barred by sovereign immunity, and that, to the extent the claims are not so barred, Plaintiff's Complaint fails to state a claim against them. The Court issued an order as to each motion to dismiss, explaining that "Eastern District of Michigan Local Rule 7.1(c) provides that '[a] respondent opposing a motion must file a response, including a brief and supporting documents then available.' E.D. Mich. L.R. 7.1(c)(1)," and providing a date certain for Plaintiff to file a response, if any, to each motion. (ECF Nos. 15, 17.) Despite being ordered to respond to the two dispositive motions, Plaintiff failed to file a response to either motion to dismiss.

Instead, on May 17, 2021, almost six weeks after Plaintiff's response to the MSHDA Defendants' motion was due, and three weeks after her response to HUD's motion to dismiss was due, Plaintiff filed a motion "to verbally give [her] response

to [Defendant's] motion to dismiss," claiming that she is unable to complete a written response due to her disability. (ECF No. 18.) Plaintiff's motion fails to offer any excuse for her substantial delay in requesting this relief, or to request an extension of time to submit a response. *See* Fed. R. Civ. P. 6(b)(1)(B); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896-98 (1990) ("[A]lthough extensions before expiration of the time period may be 'with or without motion or notice,' any post deadline extension must be 'upon motion made,' and is permissible only where the failure to meet the deadline 'was the result of excusable neglect.'"). Moreover, while the Court is cognizant that general leniency is afforded pro se litigants, that leniency is not unlimited, "[w]here, for example, a pro se litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant." *Pilgrim*, 92 F.3d at 416. That is this case, and Plaintiff's motion for a verbal response (ECF No. 18) therefore is denied.

Numerous cases have held that where a plaintiff fails to respond to a motion to dismiss, his or her claims are deemed abandoned. *See, e.g., Bazinski v. JPMorgan Chase Bank, N.A.,* No. 13-14337, 2014 WL 1405253, *1-2 (E.D. Mich. Apr. 11, 2014) ("Claims left to stand undefended against a motion to dismiss are deemed abandoned.") (collecting cases), *aff'd*, 597 F. App'x 379 (2015); *Wheeler v. Long Beach Mortg. Co.*, No. 14-14056, 2015 WL 1637619, *2 (E.D. Mich. Apr. 13, 2015) ("The fact that Plaintiffs have failed to respond to the Motion to Dismiss means that

the Court could simply grant the motion as unopposed"); *Fredericks v. Mortg. Elec. Registration Sys., Inc.*, No. 14-14270, 2015 WL 3473972, *3 (E.D. Mich. June 2, 2015) ("Plaintiffs failure to timely respond to Defendants' Motion to Dismiss, as required by E.D. Mich. L.R. 7.1(c)(1) and 7.1(e)(1) (B), amounts to a waiver of any argument in opposition to Defendants' motion") (citing *Humphrey v. U.S. Att'y Gen.'s Office,* 279 F. App'x 328, 331 (6th Cir. 2008)).

As in the above cases, Plaintiff has waived opposition to the Defendants' motions to dismiss. Nonetheless, the Court has undertaken an independent review of the motions to dismiss and the sufficiency of Plaintiff's complaint, and finds that Defendants' motions should be granted.

### 2. Sovereign Immunity

### a. HUD Defendant

As HUD explains in its motion to dismiss, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Absent a waiver, sovereign immunity shields the federal government and its agencies from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). A waiver of sovereign immunity "must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citation omitted). The burden is on the plaintiff to establish a waiver, and to identify the specific statutory

provision containing the waiver. *See Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000). If the plaintiff "cannot identify a waiver, the claim must be dismissed on jurisdictional grounds." *Id*.

Plaintiff's Complaint fails to identify any statutory basis for a waiver of sovereign immunity in this case, and her claims against HUD therefore must be dismissed. *See Reetz*, 224. F.3d at 795. Plaintiff purports to bring claims under the Fair Housing Act, Civil Rights Act, Rehabilitation Act, and Americans with Disabilities Act ("ADA"). (Compl., PageID.2.) Plaintiff fails to establish that any of these statutes waives HUD's sovereign immunity in this case. *See, e.g., Morris v. Dehaan*, 944 F.2d 905, 1991 WL 177995, at *3 (6th Cir. Sept. 12, 1991) (table case) (holding that "nothing in the Fair Housing Act ... can be construed as a congressional abrogation" of sovereign immunity); *Kelly v. Wilson*, 426 F. App'x 629, 632 (10th Cir. 2011) ("The United States has not waived its sovereign immunity from suits for money damages under the Fair Housing Act . . ."). And the Supreme Court has made clear that Congress has not waived sovereign immunity for claims seeking monetary damages under the Rehabilitation Act. *Lane*, 518 U.S. 187; *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009). Congress also has not waived sovereign immunity for ADA claims. *See Agee v. United States*, 72 Fed. Cl. 284, 289 (2006); *Fox v. U.S. Postal Serv.*, No. 18-10901, 2018 WL 6843372, at *7 (E.D. Mich. Oct. 13, 2018) (same), *report and recommendation adopted by* 2019 WL 1034221 (E.D. Mich. Mar.

5, 2019), *aff'd*, 2019 WL 8619622 (6th Cir. Oct. 30, 2019). Like the Civil Rights Act, Title II of the ADA – which prohibits disability discrimination in public programs and services – is applicable only to state and local governments, not the federal government. *See* 42 U.S.C. § 12131(1)(B); *see also Cellular Phone Taskforce v. FCC*, 217 F.3d 72, 73 (2d Cir. 2000) (noting that "Title II of the ADA is not applicable to the federal government"). And, as a federal agency, HUD is not subject to 42 U.S.C. § 1983. *See Conner v. Greef*, 99 F. App'x 577, 580 (6th Cir. 2004) ("The federal government and its officials are not subject to suit under 42 U.S.C. § 1983."); *Ana Leon T. v. Fed. Reserve Bank of Chicago*, 823 F.2d 928, 931 (6th Cir. 1987) (holding that plaintiff could not bring § 1983 claim because conduct was taken under color of federal, not state, law). Finally, to the extent Plaintiff attempts to assert a *Bivens* action[2] against HUD, predicated on perceived violations of her due process rights, a *Bivens* action may not be asserted against a federal agency. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994) (declining to extend a *Bivens*-type cause of action directly against a federal agency).

Because Plaintiff's Complaint fails to identify any statutory basis for a waiver of sovereign immunity, her claims against Defendant HUD are dismissed. *See Reetz*, 224. F.3d at 795

---

[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), authorized damages suits against federal employees for some constitutional violations.

### b. Defendants MSHDA and Heidel

Defendants MSHDA and Heidel argue that Plaintiff's claims against them are barred by the Eleventh Amendment. The Eleventh Amendment bars civil rights actions against a state, its agencies, and its departments unless the state has waived its immunity and consented to suit, or Congress has abrogated that immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment also immunizes state officials who are sued in their official capacities. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)). Defendant MSHDA, an agency of the State of Michigan, and Defendant Heidel, the Acting Director of MSHDA, are entitled to Eleventh Amendment immunity.

Eleventh Amendment immunity applies "regardless of the nature of the relief sought," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984), and "bars all suits, whether for injunctive, declaratory, or monetary relief, against the state and its departments by citizens of another state, foreigners, or its own citizens." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) (internal citations omitted); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (citing *Thiokol*); *Williams v. Mich. Bd. of Dentistry*, 39 F. App'x 147, 148-49 (6th Cir. 2002) (observing that "unless immunity is expressly waived, a state and its agencies are immune from an action for damages

and injunctive relief, and in some cases even declaratory relief, in federal court" and that "the Eleventh Amendment forbids federal courts from intruding upon state sovereignty by dictating the manner in which state officials should comply with state law") (internal quotation marks and citations omitted). The Eleventh Amendment, however, does not preclude suits against state defendants for prospective injunctive relief. *See Carten v. Kent State Univ.*, 282 F.3d 391, 397 (6th Cir. 2002) (citing *Ex parte Young*, 209 U.S. 123 (1908)) (the "*Ex parte Young* exception"); *McCormick*, 693 F.3d at 662 (citing *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000)). "There are three exceptions to a state's sovereign immunity." *Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016) (noting the three narrow exceptions to Eleventh Amendment immunity as "(1) when the state has consented to suit; (2) when the exception set forth in *Ex parte Young*, applies; and (3) when Congress has clearly and expressly abrogated the state's immunity.") (internal citations omitted). Plaintiff's Complaint does not plead that any of these exceptions apply in this case.

Thus, to the extent Plaintiff seeks money damages or declaratory or injunctive relief based on alleged past constitutional violations against MSHDA and Heidel, such as setting aside the termination of her voucher, those claims are barred by the Eleventh Amendment. *See Morris*, 1991 WL 177995, at *3 (holding district court properly dismissed claims against MSHDA and its former directors based on

Eleventh Amendment immunity and explaining that "nothing in the Fair Housing Act ... can be construed as a congressional abrogation of Michigan's Eleventh Amendment immunity"); *Hamad v. Michigan State Hous. Dev. Auth.*, No. 16-12754, 2016 WL 7242145, at *2 (E.D. Mich. Dec. 15, 2016) (finding MSHDA immune from plaintiff's Fourteenth Amendment due process claim based on MSHDA's termination of her federal housing subsidy); *Dooley v. Michigan State Hous. Dev. Auth.*, 07-10286, 2007 WL 405699, at *1 (E.D. Mich. Jan. 31, 2007) ("As an agency of the State of Michigan, MSHDA cannot be sued."). The State of Michigan has not consented to be sued for civil rights actions in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986), and Congress did not abrogate Eleventh Amendment immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). However, the Court notes that Congress has abrogated Eleventh Amendment immunity under the ADA, in limited circumstances, depending upon the nature of the ADA claim, and the Rehabilitation Act. *See Mitchell through Mitchell v. Cmty. Mental Health of Cent. Michigan*, 243 F. Supp. 3d 822, 837-38 (E.D. Mich. 2017); *Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 628 (6th Cir. 2001) (holding states "waive their Eleventh Amendment immunity with regard to Rehabilitation Act claims when they accept federal funds"); *see also* 42 U.S.C. § 2000d-7 (providing that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of section 504 of the

Rehabilitation Act of 1973."); 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."). Thus, sovereign immunity bars Plaintiff's claims against both Defendants MSHDA and Heidel, in his official capacity, except the Rehabilitation Act and possibly ADA claims (which are further addressed below), and those that seek prospective injunctive relief.

### 3. Failure to state a claim – 12(b)(6)

Defendants alternatively argue that, to the extent any of Plaintiff's claims against them are not barred by sovereign immunity, those claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6).

### a. Defendant HUD

Defendant HUD asserts, correctly, that Plaintiff fails to plead that HUD is liable for the misconduct she alleges. Specifically, she does not allege that HUD was involved in terminating her Section 8 voucher or any other act of discrimination or retaliation. (See Compl. PageID.1, 3, 7 (acknowledging that the Section 8 program "is administered through" MSHDA, that MSHDA is the entity that terminated her voucher, and that HUD is liable "through MSHDA").) Indeed, as explained above, HUD does not administer the Section 8 program. *See also Tate v. Supervisor HUD*, No. 18-148, 2018 WL 3068542, at *5 (W.D. Pa. June 21, 2018) (noting that "HUD

does not administer the Section 8 HCV program and, therefore, its agents are not in a position to effectuate Plaintiff's inclusion or exclusion from that program"). Plaintiff's Complaint therefore fails to state a claim against HUD.

In addition, Plaintiff fails to allege facts supporting a breach of contract claim based on an alleged settlement agreement with HUD. She does not attach a copy of the settlement agreement or specify the contractual terms of the alleged contract which she claims were breached. *See Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) (stating "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached.") (citation omitted). As in *Northampton*, Plaintiff here "was required to allege facts sufficient to make [her] breach-of-contract claim plausible on its face, and without the contract[] or reference to specific language, [Plaintiff] has failed to put forth a plausible claim for relief." *See id.*[3]

### b. Defendants MSHDA and Heidel

The MSHDA Defendants explain that Plaintiff's claims that they violated the Fair Housing Act fail because there is no private rights of action for violations of

---

[3] HUD further argues that this Court lacks jurisdiction over Plaintiff's breach of contract claim against it because under the Tucker Act, the United States Court of Federal Claims has exclusive "jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

these regulations, or any regulation promulgated under 42 U.S.C. § 1437f or the Act itself. *See Johnson v. City of Detroit*, 446 F.3d 614, 626 (6th Cir. 2006) ("Section 1437f (Section 8), which addresses low-income housing assistance, is likewise devoid of rights creating language."); *see also Lewis v. Wheatley*, 528 F. App'x 466, 468 (6th Cir. 2013) (same). Further, "Section 8 of USHA does not 'create a federal claim for allegedly wrongful eviction.'" *Baldridge v. Indep. Apartments*, Nos. 16-2993-JDT, 16-2994-JDT, 2016 WL 11479289, at *6 (W.D. Tenn. July 6, 2016) (citation omitted) ("The mere fact that part of [Baldridge's] rent was paid under the federally funded Housing Choice Voucher Program does not displace state law, which generally governs the relationship between landlord and tenant, nor does it create a federal claim for allegedly wrongful eviction.")), *report and recommendation adopted*, 2016 WL 4006122 (W.D. Tenn. July 26, 2016).

Further, although Congress expressed its intent to abrogate state sovereign immunity under the ADA, that abrogation is only valid in limited circumstances. *See Babcock v. Michigan*, 812 F.3d 531, 534 (6th Cir. 2016). The United States Supreme Court has promulgated a three-part test to determine whether the Eleventh Amendment bars an ADA Title II claim:

> [D]etermine ... on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006).

Defendants assert that Plaintiff cannot get past the first prong of the three-part test because, while her Complaint is rife with conclusory statements about discrimination, it is factually threadbare, and she only alleges that her voucher was terminated, not because of an alleged disability, but because "the hearing officer relied on two arrests to terminate our Section 8 voucher." (Compl., PageID.6.) Plaintiff therefore fails to state a claim under the ADA or the Rehabilitation Act because she fails to allege that she is "being excluded from participation in, denied the benefits of, or subjected to discrimination' *because* of [her] disability or handicap" or "solely by reason of" her disability. *See Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016) (noting that "[b]oth the Americans with Disabilities Act and the Rehabilitation Act require the challenged discrimination to occur *because of* disability, which is another way of saying that the plaintiff must establish a but-for relationship between the protected act and the individual's disability"). That Plaintiff has failed to identify conduct that violates the ADA or Rehabilitation Act is dispositive of her claims under the Eleventh Amendment immunity analysis set forth by the Supreme Court. *Babcock*, 812 F.3d at 539.

Plaintiff also fails to adequately allege an Equal Protection claim against the MSHDA Defendants. The Equal Protection Clause prohibits "distinctions which either burden a fundamental right, target a suspicious class, or intentionally treat one

differently from others similarly situated without any rational basis." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005). "Disabled persons are not a suspect class for purposes of an equal protection challenge," *S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 447 (6th Cir. 2008), and Plaintiff fails to allege, or even identify, any other persons who were purportedly similarly situated, or that she was treated differently than any other persons similarly situated. *Radvansky*, 395 F.3d at 312.

Plaintiff also fails to state a due process claim against the MSHDA Defendants. "Participation in a public housing program is a property interest protected by due process," and such "due process requires that Housing Program participants receive adequate notice of the grounds for termination, and must be afforded an informal hearing prior to termination." *Woods v. Willis*, 515 F. App'x 471, 478 (6th Cir. 2013) (citing *Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180, 184 (6th Cir. 1984)). Plaintiff here admits that she was provided notice of the grounds for termination of her participation in the Program on June 3, 2019 and June 27, 2019, and that she was afforded an informal hearing on September 24, 2019, before termination of her participation in the Program. (Compl. PageID.4-6.) Plaintiff appeared at that hearing with her representative, both Plaintiff and her representative provided testimony, and Plaintiff introduced 88 pages of documents into the record. (Proposal for Decision at pp. 4, 18, PageID.86, 100.) While Plaintiff

is dissatisfied with the outcome of that process, she admits she has received what she is entitled to under federal due process. Accordingly, Plaintiff fails to state a constitutional due process claim.

Finally, for the reasons explained above with regard to Defendant HUD, Plaintiff fails to state a claim for breach of contract because her vague allegations that she had an "agreement for her section 8 voucher" is devoid of any supporting facts and simply too vague to support a breach of contract claim against the MSHDA Defendants.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Preliminary Injunction (ECF No. 8) is DENIED, Plaintiff's Motion for Verbal Response (ECF No. 18) is DENIED, Defendants Heidel and MSHDA's Motion to Dismiss (ECF No. 13) is GRANTED, Defendant HUD's Motion to Dismiss (ECF No. 16) is GRANTED, and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

s/Paul D. Borman<br>
Paul D. Borman<br>
United States District Judge

Dated:  June 29, 2021